# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RICHARDI REBALDO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-4062** |
| **CADET ALBERT JENKINS, COLONEL TOMMY BRUMFIELD, MAJOR JERRY MILLER, SERGEANT GARY KING, SOCIAL WORKER LIZ OLIVERA, DR. LO - MENTAL HEALTH, SOCIAL WORKER SHERRYL MUWWAKKI, WARDEN JEFFREY TRAVIS, RAYBURN CORRECTIONAL CENTER** | **SECTION "A"(4)** |

## REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss (Rec. Doc. No. 39)** filed by the defendants, Dr. William Lo, Liz Olivera, Gary King, and Jerry Miller (collectively, "the Defendants"), pursuant to Fed. R. Civ. P. 12(b)(6). The Defendants urge dismissal of the Plaintiff, Richardi J. Rebaldo's ("Rebaldo") claims against them for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e and La. Rev. Stat. Ann. § 15:1184(A)(2). Rebaldo, opposes the motion alleging that the exhaustion requirement was met prior to filing the Complaint. The motion, along with the entire matter, was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as

applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

I.      **Factual Summary**

Rebaldo, filed this *pro se* and *in forma pauperis* Complaint pursuant to 42 U.S.C. § 1983 and La. Civ. Code art. 2315 against the defendants, Cadet Albert Jenkins, Colonel Tommy Brumfield ("Brumfield"), Major Jerry Miller ("Miller"), Sergeant Gary King ("King"), Social Worker Liz Olivera ("Olivera"), Dr. William Lo ("Lo"), Social Worker Sherryl Muwwakki ("Muwwakki"), and Warden Jeffrey Travis ("Travis"), each in their official and individual capacities, seeking damages as a result of the alleged physical abuse, assault, battery, excessive force, cruel and unusual punishment, and medical indifference, which occurred while he was housed in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana. The Court has since appointed counsel to represent Rebaldo in this action.[1] The Court also has already dismissed without prejudice three Defendants, Brumfield, Milwwakki, and Travis, for Rebaldo's failure to comply with Fed. R. Civ. P. 4(m).[2] Plaintiff has not yet made service on defendant Jenkins.[3]

Rebaldo makes the following allegations in his Complaint. He alleges that, on August 6, 2007, Defendant Jenkins approached him while he was using the toilet. Jenkins requested Rebaldo's prisoner number so that he could report him for masturbating. Jenkins directed Rebaldo to report to him when he was finished. Jenkins then escorted Rebaldo to a storage closet where defendant

---

[1] Rec. Doc. No. 50.

[2] Rec. Doc. Nos. 32, 46.

[3] A separate show cause order is being issued by the undersigned regarding service on this Defendant.

King was standing nearby. Jenkins took Rebaldo into the closet and, on Jenkins request, King locked the door from the outside.

After standing in the dark for a few minutes, the lights came on and Jenkins put his arm around Rebaldo. Jenkins then told Rebaldo that he could force him to perform oral sex or that he could perform oral sex on Rebaldo if he wanted. Jenkins did neither and eventually knocked on the door for King to let them out of the closet. Rebaldo claims that he told King what happened and King did not believe him and threatened him for being a "rat."

Rebaldo further alleges that, on August 7, 2007, Jenkins approached him in the dining hall to inquire if Rebaldo was mad at him. Rebaldo told Jenkins it was a rule violation to talk during meals, and Jenkins cursed at him. When Jenkins saw him later, he walked up to Rebaldo and squeezed his breast and nipple so hard it caused bruising for five days. Rebaldo told Jenkins not to touch him again and Jenkins blew him a kiss. Jenkins walked over to King and the two of them began to laugh and make sexually suggestive gestures toward Rebaldo.

About one half hour later, Jenkins called Rebaldo over and escorted him to the closet again. King locked the door from the outside. Jenkins told Rebaldo that he received information that Rebaldo and his friends were smuggling marijuana into the prison. Jenkins then ordered Rebaldo to remove his clothes, including his boxer shorts, and to bend over. After several minutes, Rebaldo felt a sharp pain in his rectum. He turned to see Jenkins holding a wooden broom stick with a condom on the end. Rebaldo pulled up his boxers, grabbed his clothes, and tried to get out of the closet. Jenkins knocked for King to open the door, and Rebaldo ran past King wearing only his boxer shorts.

Rebaldo alleges that the sexual battery upon him was a violation of Louisiana law and prison policy. He suffered humiliation, pain, and trauma. He further alleges that Jenkins violated prison policy regarding cavity searches without medical personnel present.

Rebaldo also alleges that, when he told King that he wanted to see the captain, King told him that he better keep what happened to himself. King told him that he could be "messed over" for reporting what happened. In spite of this, Rebaldo filed a grievance complaint.

In connection with the grievance, he spoke with Defendants Brumfield, Miller, and Travis. He claims that Brumfield forced him to take a polygraph test without an attorney present and under threat that he would lose good time credits and be placed in administrative segregation. He claims that within one week, Jenkins was fired but nothing was done for him. Rebaldo further claims that he and another inmate became victims of retaliatory acts by other prison officials after they each lodged complaints against Jenkins.

Rebaldo alleges that Defendants Travis, Brumfield, and Miller are responsible for the actions of the prison staff. He also alleges that Brumfield knew of prior complaints against Travis for similar conduct and failed to correct his behavior. He also claims that Brumfield and Miller covered up the investigation into the charges of sexual battery to protect themselves and Warden Travis from embarrassment. He also contends that Miller is liable for his failure to report Jenkins's crimes to the district attorney. He further claims that Miller and Brumfield failed to curb the known physical abuse by Jenkins in violation of the Eighth Amendment and state law.

Rebaldo further alleges that Brumfield's failure to discipline Jenkins amounted to deliberate indifference to his well-being and contributed to the violations of his constitutional rights and

Louisiana law. He also alleges that Brumfield violated his due process rights when he failed to overturn the disciplinary convictions despite their falsity and his knowledge of Jenkins acts.

Rebaldo further claims that he named Jenkins as a Defendant for his sadistic and malicious acts of sexual battery and for causing him physical and mental pain, depression, and panic attacks. He also sues King for his role in facilitating Jenkins criminal acts, by locking him in the closet with Jenkins, knowing what was about to happen. Rebaldo further claims that Jenkins and King are both guilty of sexual battery. He claims that they also used excessive force against him and imposed cruel and unusual punishment, all in abuse of their powers as correctional officers and in violation of the Eighth Amendment.

He also names Dr. William Lo for his failure to provide him with therapy and proper medication for his symptoms–depression, inability to sleep, and nightmares–caused by the foregoing events. He also sues the prison social workers, Milwwakki and Olivera, for their apathetic attitudes towards his mental well-being. He claims that Milwwakki threatened to place him on suicide precautions and to use a straight jacket if he continued to complain to her about his trauma. He also claims that she refused to provide him with therapy and medication for his mental upset.

He further claims that Olivera violated his privacy by speaking with him about his mental state in front of a correctional officer and other inmates. He claims that the actions by both women amounted to deliberate indifference in violation of his due process rights.

Rebaldo seeks damages in the amount of $1.5 million, jointly and severally, against Jenkins and King for physical and emotional injuries and sexual battery. He seeks $500,000.00, jointly and severally, against Defendants Lo, Milwwakki, and Olivera for the physical and emotional punishment and injury resulting from the intentional denial of adequate mental health and medical

care. He also seeks $100,000.00, jointly and severally, against Brumfield and Miller, for the denial of due process, punishment, and emotional retaliation arising from the false disciplinary charges against him after he reported the sexual misconduct by Jenkins. Rebaldo requests an award of $20,000.00 against Warden Travis for his failure to adequately screen his employees and for failure to monitor the other commanding officers and their retaliation against the inmates.

## II.     Defendant's Pending Motion

### A.     Defendants' Argument

The Defendants, Lo, Olivera, King, and Miller, filed the instant motion seeking dismissal of the plaintiff's claims against them for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e and La. Rev. Stat. Ann. § 15:1184(A)(2). The Defendants argue that two grievance complaints, RCC-2007-474 and RCC-2007-379, referenced by Rebaldo in the attachments to the complaint did not raise any claims against Lo, Olivera, or Miller. In addition, they argue that the acts attributed to King in one of the grievance complaints did not put the Defendants on notice that he was seeking relief from King for the acts now alleged to be in violation of federal and state law.

Specifically, the Defendants, engaging in a narrow reading of the grievances filed by Rebaldo, contend that Rebaldo did not mention claims against Miller, Lo, Olivera, or King in either of the two referenced grievances. Instead, they argue that RCC-2007-474 addresses a denial of medical care by a prison official who is not a named defendant. Further, while the Defendants concede that RCC-2007-379 addresses some of the claims in this Complaint, in their view it does not include claims against Miller, Lo, Olivera, or King as a perpetrator. The defendants instead describe the claims as mental health claims "collateral to the actions of Albert Jenkins."

B. **Rebaldo's Opposition**

Rebaldo opposes the motion by first noting that the Defendants concede that he exhausted administrative remedies as to the two mentioned grievance complaints. Rebaldo further alleges that, by law, he is not required to demonstrate exhaustion in the Complaint itself, and the premise of Defendants' motion under Rule 12(b)(6) is inappropriate.

Rebaldo also argues that the defendants are incorrect in their conclusion that the two referenced grievances did not give adequate notice of his claims to or against all of the named Defendants. Rebaldo contends that, by law, he was not required to name all potential Defendants in his grievance complaint or spell out each factual detail of every claim. He also argues that the Defendants' own investigation during the grievance process placed them on notice of the persons involved in the assaults, batteries, and medical attention given to him.

Rebaldo also complains that the Defendants are asking the Court to delve into the factual details of the case to determine exhaustion without having first produced the administrative record. He argues that resolution of the validity of the facts is not an appropriate basis for relief under Rule 12(b)(6). In the alternative, Rebaldo requests that, before considering dismissal, newly appointed counsel be given time to amend the complaint and to engage in discovery with respect to exhaustion and the matters alleged in the complaint.

III. **Standards of Review**

A. **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must

plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (recognizing a change in the standard of review). "Factual allegations must be enough to raise a right to relief above the speculative level on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact)." (uppercase and parenthetical in original) *Twombly*, 550 U.S. at 555-56 (quotation marks, citations, and footnote omitted). Plausible grounds "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Id.* at 556. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)).

In resolving a Rule 12(b)(6) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint. However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd Cir. 1990). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

The two administrate grievance complaints attached to the Defendants' Rule 12(b)(6) motion are referenced by Rebaldo in his Complaint, and some of the responses thereto are attached to the Complaint as exhibits. Accordingly, the attachments to the motion are appropriate for the Court's review under Rule 12(b)(6). *See Causey*, 394 F. 3d at 288.

### B. Exhaustion Requirement Under 42 U.S.C. § 1997(e)(a)

Title 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996 ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516 (2002). Therefore, by its very terms, the PLRA applies to the § 1983 claims raised by Rebaldo.

The failure to exhaust is an affirmative defense and, under the PLRA, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, because exhaustion is an affirmative defense, the Defendants would bear the burden of proof concerning ARP exhaustion both at trial and in pretrial motions.

"Thus, if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." (emphasis in original) *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *accord Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). In the instant motion, the Defendants rely upon the affirmative defense of failure to exhaust the ARP. The Defendants therefore have the burden

9

to establish that Rebaldo has failed to state a claim for which relief can be granted because he has failed to exhaust administrative remedies under federal and state law. *See Martin*, 353 F3d. at 413.

If defendants fail to establish any essential element of their affirmative defense, *Id.*, or if plaintiff's complaint is sufficient to survive dismissal under Rule 12(b)(6), the motion must be denied. *See Taita Chem. Co., Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377, 388-89 (5th Cir. 2001) (addressing a motion for summary judgment on an affirmative defense). In this case, the defendants have failed to meet their burden on the affirmative defense of failure to exhaust as detailed below.

        C.        **Exhaustion Requirement Under La. Rev. Stat. Ann. § 15:1184(A)(2)**

Similarly, Louisiana law provides that "[n]o prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted. If a prisoner suit is filed in contravention of this Paragraph, the court shall dismiss the suit without prejudice." La. Rev. Stat. Ann. § 15:1184(A)(2). This requirement applies to any prisoner complaint "with respect to the conditions of confinement or the effects of actions by government officials in the lives of persons confined in prison." La. Rev. Stat. Ann. §15:1184(A)(1)(a).

**IV.**    **Analysis**

The Court first notes that the Defendants have made no argument whatsoever regarding exhaustion as it pertains to Rebaldo's claims raised under Louisiana law, other than by mere citation to the La. Rev. Stat. Ann. § 15:1184(A)(2) in the motion. Nevertheless, since it appears to be their intent to urge failure to exhaust under state law, the Court will consider the exhaustion arguments as if raised under both the state and federal statutes.[4]

---

[4] Since Louisiana case law is non-existent on determining the burdens of the prisoner/plaintiff and the defendants on the exhaustion issue, the Court will look to federal law on pleading and procedure to address the motion.

10

In the instant motion, the Court is not asked to address the legal sufficiency of the claims in the Complaint as in a typical Rule 12(b)(6) motion.[5] Instead, the Defendants urge failure to exhaust, an affirmative defense for which they bear the burden of proof. In support of the motion, the Defendants, in their words, are relying "solely" on the two grievances addressed in the attachments to the Complaint. The motion makes no reference to any attempt on the part of the Defendants to determine whether Rebaldo filed other grievance complaints which would be relevant to the failure to exhaust defense.

Per the dictates of the United States Supreme Court as set forth above, the prisoner/plaintiff is not required to demonstrate or plead exhaustion in the complaint. *Jones*, 549 U.S. at 216. The United States Fifth Circuit has declared that "[s]ubsequent to *Jones* . . . '[a]ny failure to exhaust must be asserted by the defendant.'" *Samuels v. Huff*, No. 08-30094 c/w 08-30290, 2009 WL 2337861, at *1 (5th Cir. Jul. 30, 2009) (quoting *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007)). Thus, a district court can not rely on the allegations in a complaint to determine exhaustion unless the failure to exhaust is certain. *Torns v. Miss. Dept. of Corr.*, 301 Fed. Appx. 386, 389 (5th. Cir. 2008). Relying on *Jones* and *Carbe*, the United States Fifth Circuit continues to emphasize that the defendants bear the burden proof on the exhaustion defense.

> [W]here the complaint does not clearly show that the inmate failed to exhaust administrative remedies, it is defendants' job to raise and prove such an affirmative defense. This is particularly true here, where defendants possess the necessary information to assure the district court that additional administrative remedies were available to [plaintiff] or confirm that they were not.

*Torns*, 301 Fed. Appx. at 390.

---

[5]*See*, Rec. Doc. No. 39-2, page 2.

The failure to exhaust is not certain in this case in which Rebaldo has declared in the Complaint and in his opposition that he did complete exhaustion. While it is helpful that the then-*pro se* plaintiff attached administrative responses to his Complaint, it is not clear that the related grievances were his only complaints to the prison authorities related to these claims. The defendants have not provided any declaration or affidavit which would establish that their records as a whole confirm the lack of exhaustion. Instead, in their own words, they are relying "solely" on the documents attached to the inmate's Complaint to support their failure to exhaust defense. According to Supreme Court precedent, reliance on the Complaint is inappropriate, and it is inadequate in this case to prove or disprove exhaustion.

The Defendants also argue that the two referenced grievances do not give adequate notice of all of the claims or potential defendants. The primary purpose of a grievance complaint is to alert prison officials to a problem to be addressed; it is not to provide personal notice to a particular official that he may be sued. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). Instead, a grievance complaint must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. *Id*. There is "nothing in the statute that imposes a 'name all defendants' requirement." *Jones*, 549 U.S. at 217.

To the extent that the Defendants rely in part on dismissal because not all Defendants were specifically named, that alone is not sufficient. At a minimum, both of the grievance complaints address the same inappropriate behavior by Jenkins that is addressed in the Complaint, including Rebaldo's emotional upset and the sexually suggestive taunting by Jenkins, including alleged pole-fondling. Both complaints also speak to Rebaldo's claims of emotional upset arising from the alleged abuse.

In addition, the alleged anal sexual abuse by Jenkins is specifically mentioned in RCC 2007-474. Rebaldo also mentions in RCC-2007-379 that defendant King was present during two of the incidents between him and Jenkins. While the Defendants narrowly read this grievance complaint, the allegations are at least sufficient to put prison officials on notice that King was aware of the incidents, if not involved himself. The Court also notes that the copy of the grievance complaint attached to defendants' motion appears to indicate that Defendant Miller was, as Rebaldo alleges, involved in the process related to this grievance.

The federal courts engage in liberal construction of *pro se* grievances and employ lenient dictates on the details required in an administrative grievance complaint. *See Johnson*, 385 F.3d at 516-17. In light of this, the defendants' very narrow reading of the two grievance complaints is not persuasive on the issue of notice.

Further, the Court cannot resolve at this time whether the grievances were sufficient notice to the prison to constitute exhaustion of the claims of indifference to his mental health care. As noted above, the Defendants have not met their burden of establishing that the two grievances were the only efforts Rebaldo made to exhaust any or all of his claims now before the Court.

Considering the foregoing, the burden is on the Defendants to prove the lack of exhaustion, not on Rebaldo to demonstrate exhaustion in his Complaint. The Court finds that the Defendants have not adequately proven a failure to exhaust, because the motion is based "solely" on the two grievances addressed in the attachments to the Complaint with no showing that this is a complete record of Rebaldo's grievances to the prison officials on these matters.

This conclusion does not prevent the Defendants from filing a properly supported motion, perhaps one for summary judgment, at a later date. In the meantime, counsel will have the opportunity to conduct discovery and possibly amend the pleadings to flesh-out the exhaustion issue

13

and other matters presented in the *pro se* filed complaint. However, in the posture of the case at this time, the defendants have not met the burden necessary to entitle them to dismissal under Rule 12(b)(6) on the exhaustion issue.

## V.     Recommendation

It is therefore **RECOMMENDED** that the **Motion to Dismiss (Rec. Doc. No. 39)** filed by the defendants, Dr. William Lo, Liz Olivera, Gary King, and Jerry Miller, be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 25th day of August, 2009.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**