**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RICHARDI J. REBALDO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-4062** |
| **CADET ALBERT JENKINS, COLONEL TOMMY BRUMFIELD, MAJOR JERRY MILLER, SARGENT GARY KING, SOCIAL WORKER LIZ OLIVERA, DR. LO MENTAL HEALTH, SOCIAL WORKER SHERYL MUWWAKKI, WARDEN JEFFERY TRAVIS** | **SECTION "A"(4)** |

## PARTIAL REPORT AND RECOMMENDATION

Before the Court is the **Motion for Summary Judgment (Rec. Doc. No. 71)** filed by the

defendants, Dr. William Lo, Liz Olivera, and Jerry Miller, seeking judgment as a matter of law

against the plaintiff, Richardi J. Rebaldo ("Rebaldo"), dismissing the claims against them in their

official capacity under the Eleventh Amendment sovereign immunity and dismissing the claims

against them in their individual capacity under the doctrine of qualified immunity. Rebaldo has filed

an opposition to the motion arguing that the defendants are not entitled to qualified immunity.[1]

The motion, along with the entire matter, was referred to a United States Magistrate Judge

to conduct a hearing, including an evidentiary hearing, if necessary and to submit proposed findings

and recommendations for disposition pursuant to **28 U.S.C. § 636(1)(B) and (C), § 1915(e)(2), and**

---

[1]Rec. Doc. No. 72.

**§ 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.  Upon review of the entire record, the Court has determined that the motion can be disposed of without an evidentiary hearing.

## I.   Factual and Procedural Background

Rebaldo filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983, and under state law, against the defendants, Cadet Albert Jenkins ("Jenkins"), Colonel Tommy Brumfield ("Brumfield"), Major Jerry Miller ("Miller"), Sergeant Gary King ("King"), Warden Jeffrey Travis ("Travis"), Dr. William Lo ("Lo"), and Social Workers Liz Olivera ("Olivera") and Sherryl Muwwakki ("Muwwakki"), each in their official and individual capacities.  The Court has since appointed counsel to represent Rebaldo in this action.[2]  The Court also has already dismissed without prejudice three defendants, Brumfield, Milwwakki, and Travis, for Rebaldo's failure to serve summons in compliance with Fed. R. Civ. P. 4(m).[3]  Plaintiff has not yet made service on defendant Jenkins.[4]

Rebaldo filed this suit seeking damages and injunctive relief against the defendants as a result of the alleged physical abuse, assault, battery, excessive force, cruel and unusual punishment, abuse of power, and medical indifference, which occurred while he was housed in the B.B. "Sixty" Rayburn Correctional Center ("Rayburn") in Angie, Louisiana.[5]

Rebaldo alleges that, on August 6, 2007, Cadet Jenkins approached him while he was using the toilet.  Jenkins requested Rebaldo's prisoner number so that he could report him for

---

[2]Rec. Doc. No. 50.

[3]Rec. Doc. Nos. 32, 46.

[4]On January 7, 2010, counsel for Rebaldo notified the Court that they are still attempting to serve Travis.  Rec. Doc. No. 77.

[5]The claims against Defendants Jeffrey Travis, Tommy Brumfield and Sheryl Muwwakki were dismissed without prejudice for failure to comply with Fed. R. Civ. P. 4(m). (R. Doc. 46)

masturbating.  At Jenkins request, Rebaldo reported to him when he was finished on the toilet. Jenkins then escorted Rebaldo to a supply closet where Cadet King was standing.  Jenkins took Rebaldo into the closet and, on Jenkins request, King locked the door from the outside.

After standing in the dark for a few minutes, the lights came on and Jenkins put his arm around Rebaldo.  Jenkins then told Rebaldo that he could force him to perform oral sex or that he could perform oral sex on Rebaldo, and no one would know where they were except King.  After threatening Rebaldo, Jenkins did not do anything to him.  Jenkins then knocked on the door, and King let them out of the closet.  Rebaldo claims that he told King what happened and King did not believe him and threatened him for being a "rat."

The next day, Jenkins approached Rebaldo while he was eating lunch in the dining hall.  He asked Rebaldo if he was mad at him.  Rebaldo responded that it was a rule violation to talk during meals, and Jenkins cursed at him.  When Jenkins saw him later, he walked up to Rebaldo and squeezed his breast and nipple so hard it caused bruising for five days.  Rebaldo told Jenkins not to touch him again, and Jenkins winked and blew him a kiss.  Jenkins then walked over to King and the two of them began to laugh and make sexually suggestive gestures toward Rebaldo.

About one half hour later, Jenkins called Rebaldo over and escorted him to the closet again. King locked the door from the outside.  Jenkins told Rebaldo that he received information that Rebaldo and his friends were smuggling marijuana into the prison and selling it.  Rebaldo denied the allegations.  Jenkins told him that he would have to do a cavity search.  He ordered Rebaldo to remove his clothes, including his boxer shorts, and to bend over.  After several minutes, Rebaldo felt a sharp pain in his rectum.  He turned and ask Jenkins what he was doing.  Jenkins told him that he had to do a cavity search.  Rebaldo then saw that he was stroking the wooden handle of a broom, which had a condom on the end of it.  Rebaldo believes that Jenkins stuck the broomstick into his

rectum. Rebaldo then pulled up his boxers, grabbed his clothes, and tried to get out of the closet. Jenkins knocked for King to open the door, and Rebaldo ran past King wearing only his boxer shorts.

Rebaldo ran back to his bunk and hid under the covers. King later approached him and advised him that, if he knew what was best for him, he would not report the incident. On the advice of another inmate, he filed an administrative grievance complaint against Jenkins. He eventually spoke with Colonel Brumfield, Major Miller, and Warden Travis. He and another inmate were given a polygraph test. Within one week, Jenkins was fired and escorted from the prison.

Rebaldo alleges that Travis, Brumfield, and Miller are responsible for the actions of the prison staff members. He further alleges that Brumfield and Miller knew of prior complaints against Jenkins for similar acts and failed to investigate and take corrective action. The failure to take disciplinary action contributed to the deliberate indifference and aided in the assault and battery. He also complains that Brumfield should have overturned the wrongful disciplinary convictions asserted against him after he complained about the incident with Jenkins. He further claims that Miller should have reported the incidents of sexual battery to the district attorney for prosecution.

He also alleges that he named Jenkins as a defendant for the sexual battery and the on-going physical and mental pain and suffering it has caused. He urges that this violated the prohibition against cruel and unusual punishment and constituted excessive force, assault, and sexual battery.

Rebaldo also names King as a defendant for his role in locking the closet for Jenkins to perform the sexual battery. This he claims was excessive force, assault and battery, and violated his Eighth Amendment rights.

He has named Dr. Lo for medical indifference in failing to provide him with proper medication for his panic attacks, depression, and insomnia caused by the battery. He claims that Dr.

Lo and Ms. Mulwwakki were both an "uncaring and apathetic professional health care provider."[6] He further claims that Mulwwakki refused to provide him with therapy and medication and for putting him on suicide watch in a straight jacket. He also alleges that Ms. Olivera failed to provide him with therapy and refused to talk to him except with a guard in front of 30 other inmates.

Rebaldo seeks $1.5 million in monetary damages against Jenkins and King for violation of his constitutional rights and state law. He seeks $500,000 in damages against Dr. Lo, Mulwwakki, and Olivera for emotional damages resulting from the failure to provide him with adequate medical care.

He further seeks an award of $100,000 against Brumfield and Miller for punishment and emotional retaliation from false disciplinary charges falsified by Brumfield after he reported the sexual misconduct by Jenkins and the resulting denial of due process. He also seeks $20,000 in damages from Travis for his failure to adequately screen his employees and for failure to "keep tabs" on the commanding officers and their retaliatory actions against inmates.

The motion before the Court is urged by three of the named defendants only, Miller, Lo, and Olivera. The defendants argue that they are entitled to summary judgment in their official capacities, because suit against them under § 1983 and state law in that capacity is barred by the Eleventh Amendment immunity doctrine. In addition, the defendants argue that they are each entitled to qualified immunity from the § 1983 claims.

Rebaldo opposes the motion asserting that the defendants are not entitled to qualified immunity. The opposition does not address the defendants' Eleventh Amendment argument.

---

[6] Rec. Doc. No. 1, p. 26.

## II.    Standards of Review

### A.    Review of a Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id*. at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324. If the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

**B.     Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Although qualified immunity is an affirmative defense, "the plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

The courts utilize a two-step analysis to determine whether officials are entitled to qualified immunity for a constitutional violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 813 (2009); *see also Collier*, 569 F.3d at 217. The United States Supreme Court has recognized that the lower courts have the discretion to decide which prong to address first, "in light of the circumstances of the particular case at hand." *Pearson*, 129 S. Ct. at 818; *Collier*, 569 F.3d at 217.

In one step, the courts will determine whether the plaintiff has alleged a violation of a constitutional right and, in the other step, whether the officers' conduct was objectively reasonable in light of clearly established law at the time the challenged conduct occurred. *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). In determining this, the courts will apply an objective standard, "based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was

clearly established at the time of the defendant's actions." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007).

For a right to be "clearly established," "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004) (quoting *Anderson*, 483 U.S. at 640); *Wernecke v. Garcia*, 591 F.3d 386 (5th Cir. 2009). "The 'clearly established' standard does not mean that officials' conduct is protected by qualified immunity unless 'the very action in question has previously been held unlawful.'" *Id.* at 350 (quoting *Anderson*, 483 U.S. at 640). "[W]hat 'clearly established' means . . . depends largely 'upon the level of generality at which the relevant "legal rule" is to be identified.'" *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (quoting *Anderson*, 483 U.S. at 639).

"[A]n official does not lose qualified immunity merely because a certain right is clearly established in the abstract." *Kinney*, 367 F.3d at 350. Officials should receive the protection of qualified immunity "unless the law is clear in the more particularized sense that reasonable officials should be 'on notice that their conduct is unlawful.'" *Id.* (quoting *Saucier*, 533 U.S. at 206). The Court's focus, for purposes of the "clearly established" analysis, qualified immunity is unavailable "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002).

## III.    <u>Analysis</u>

### A.    <u>Official Capacity Claims Against Miller, Lo, and Olivera</u>

As outlined above, the defendants argue that the § 1983 claims and state law claims against them in their official capacities are barred by the Eleventh Amendment immunity doctrine. Rebaldo did not respond to this argument in his opposition to the instant motion.

Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his constitutional rights. 42 U.S.C. § 1983 (2006). A plaintiff must prove both the constitutional violation and that the action was taken under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981). However, as argued by the defendants, a state actor in his official capacity is not considered to be a person for purposes of suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). In keeping with its long-standing doctrine, the Supreme Court has held that, when a state actor is sued in his official capacity, the action is considered to be one taken against the department he represents. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).

In this case, these defendants are employed by the Louisiana Department of Corrections ("DOC"), which is a department within the Louisiana state government. La. Rev. Stat. Ann. § 36:401 (2010). For Eleventh Amendment purposes, the DOC is considered an arm of the state since any money judgment against it or its subdivisions necessarily would be paid from state funds. *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. 1985). Therefore, suit against the State, the DOC, and its employees in their official capacities implicates the Eleventh Amendment immunity doctrine. *Muhammad v. Louisiana*, No. 99-2694 c/w 99-3742, 2000 WL 1568210 (E.D. La. Oct. 18, 2000); *Citrano v. Allen Corr. Ctr.*, 891 F. Supp. 312, 320 (W.D. La. 1995) ("A suit against any state correctional center would be suit against the state and therefore barred by the Eleventh Amendment.") (citing *Anderson*, 655 F. Supp. at 560; *Building Eng'g Servs. Co. v. Louisiana*, 459 F. Supp. 180 (E.D. La. 1978))).

The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State. *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F .2d 183, 185-86 (5th Cir.1986). A state may expressly waive this Eleventh Amendment sovereign immunity. *See Edelman v. Jordan,* 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed "unequivocally"); *Welch v. Dep't of Highways,* 780 F.2d 1268, 1271-73 (5th Cir.1986). However, the State of Louisiana has not done so.

To the contrary, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court." Accordingly, the Court is without jurisdiction to hear the plaintiff's claims for monetary relief against the State of Louisiana, the DOC, or the named defendants in their official capacities. *See Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

The Court notes that Rebaldo also indicates that he seeks injunctive relief against the defendants.[7] He does not indicate the basis for the injunction or the nature of the relief, that is, whether it would be prospective in effect. The Eleventh Amendment does not protect state officials from claims for prospective injunctive relief when it is alleged that the state officials are acting in violation of federal law. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908); *Edelman*, 415 U.S. at 664; *Brennan v. Stewart*, 834 F.2d 1248, 1252 (5th Cir. 1988). To meet this exception in its application to a § 1983 suit, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect. *See Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). Thus, while declaratory and prospective injunctive relief can not

---

[7]Rec. Doc. No. 1, pp. 11, 12.

be pursued against the State in federal court, it can be pursued against a state official sued in his official capacity.

In this case, Rebaldo has not indicated the basis for his request for injunctive relief. A thorough reading of his complaint and his detailed requests for monetary relief fails to disclose any basis for the award of injunctive relief against the defendants. Without sufficient basis for the Court to find that his non-specific request for injunctive relief is prospective in nature, Rebaldo has failed to meet his burden of overcoming the Eleventh Amendment immunity bar under *Ex Parte Young* to bring this action against the named defendants in their official capacities.

Furthermore, the United States Fifth Circuit Court of Appeals has held that "a claim that state officials violated *state* law in carrying out their official responsibilities is a claim against the State." *Hughes v. Savell*, 902 F.2d 376, 378 (5th Cir. 1990) (citing *Pennhurst State Sch.*, 465 U.S. at 121) (emphasis in original); *Turner v. Wimberly*, No. 93-4163, 1994 WL 25525, at *1 (E.D. La. Jan. 21, 1994) (Carr, J.); *Chambers v. Stalder*, Nos. 92-1702/92-1901, 1992 WL 404269 (E.D. La. Dec. 29, 1992) (Fonseca, MJ). It follows, therefore, that the Eleventh Amendment bars suit in federal court against a state defendant in his official capacity for alleged violations of state law. *Id.*; *accord Ebanks v. Stalder*, Nos. 95-1743/95-2575, 1995 WL 769726, at *5-6 (E.D. La. Dec. 27, 1995) (Duval, J.). Unlike with federal claims, this bar applies regardless of the nature of the relief sought. *Joe Conte Toyota, Inc. v. Toyota Motor Sales, USA, Inc.*, Nos. 93-4281/93-4219, 1994 WL 67896, at *2 (E.D. La. Feb. 17, 1994) (Carr, J.) (citing *Pennhurst State Sch.*, 465 U.S. at 106 (holding that *Ex Parte Young* exception does not extend to state law claims for prospective injunctive relief)).

For the foregoing reasons, and having found that Rebaldo has not sufficiently alleged or shown that he is pursuing prospective injunctive relief, the § 1983 and state law claims against the defendants in their official capacities should be dismissed without prejudice because the Court lacks

jurisdiction to consider said claims. *See Warnock*, 88 F.3d at 343. The defendants' Motion for Summary Judgment should be granted to the extent its seeks dismissal of the § 1983 and state law claims against Miller, Lo, and Olivera, each in their official capacity.

###     B.     Claims against Jerry Miller in His Individual Capacity

The defendant Miller contends that the individual capacity claims under § 1983 against him should be dismissed because Rebaldo failed to identify any personal involvement in any alleged constitutional violation. As such, he can not be vicariously liable under § 1983 for the actions of the other defendants. Rebaldo argues that Miller had information regarding and knew about the risks posed by Jenkins with regard to prisoner safety.

A careful reading of Rebaldo's complaint reflects that his claims against Miller are four-fold: (1) he improperly covered-up the investigation into Jenkins sexual acts against other inmates and failed to take disciplinary action against Jenkins; (2) he failed to report Jenkins's acts to the district attorney for prosecution; (3) he is liable for the wrongful actions of the other defendants; and, (4) he and Brumfield knew of the prior abusive acts and still allowed Jenkins back on duty, and failed to protect him from abuse by Jenkins.

As discussed previously, to recover under § 1983, Rebaldo must establish that a state actor deprived him of a right secured by the Constitution or laws of the United States. *Flagg Bros., Inc.*, 436 U.S. at 156. Here Rebaldo must do so with regard to each allegation against Miller.

Rebaldo claims that Miller "covered up" the investigation into and failed to report to the district attorney the allegations of sexual abuse by Jenkins does not state a constitutional violation. First, there is no constitutional right for inmates to have incidents investigated in the manner that they desire. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (no right for prisoners to have complaints resolved to their satisfaction); *accord Edmond v. Martin*, 100 F.3d 952, 1996 WL

625331 (5th Cir. Oct. 2, 1996) (Table, Text in Westlaw) (claim that a defendant failed to investigate and denied a prisoner's grievance raises no constitutional issue); *Thomas v. Lensing*, 31 Fed. Appx. 153, 2001 WL 1747900, at *1 (5th Cir. Dec. 11, 2001) (same). This portion of his claim does not invoke constitutional protection or entitle him to redress under § 1983.

In this case, even if the defendants covered-up the investigation into Jenkins to save their reputations, Rebaldo has not shown that this is a violation of a right secured by the Constitution or laws of the United States. *See*, *e.g.*, *Knox v. Wainscott*, No. 03-C-1429, 2003 WL 21148973, at *9 (N.D. Ill. May 14, 2003) (no separate cause of action under § 1983 against a defendant for falsifying an documents to cover up wrongdoing committed by fellow officers.)

Similarly, if the wrongdoings, including the abuse by Jenkins, were "covered up," this may be a violation of prison regulations or even state law, but there is no showing that it is a violation of any right protected by the Constitution or laws of the United States. *Cf. Baker v. McCollan*, 443 U.S. 137, 146 (1979) (noting that many claims which may be actionable as violations of state tort law do not amount to constitutional violations); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Thus, even if Rebaldo contends that Miller and the other defendants acted in concert to hide Jenkins's wrongdoings, "'it remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient.'" *Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993) (quoting *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984)).

Next, it is well settled that private citizens do not have a constitutional right to have an individual criminally prosecuted. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Batchelder*, 442 U.S. 114, 124 (1979); *Joseph v. Lewis*, 95 F.3d 54, 1996 WL 460071 (5th Cir. July 30, 1996) (Table, Text in Westlaw); *see also Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir.

1990). It follows that Rebaldo would have no constitutional right to compel defendant Miller to have charges brought against Jenkins. *Cf. Carter v. Maxwell*, No. 07-CV-1254, 2007 WL 2963665, at *1 (W.D. La. Sept. 27, 2007) (Report and Recommendation, adopted Oct. 9, 2007) (dismissing plaintiff's claim as frivolous reasoning that the "Plaintiff has no constitutional right to have someone criminally prosecuted. . . . Therefore, the alleged actions, or inaction, of the named defendants did not infringe upon any legally recognized right belonging to Plaintiff."). Rebaldo himself apparently made no effort to report the alleged criminal acts to the police or to the district attorney. The fact that he believes the actions to be criminal is not sufficient to establish a constitutional wrong for which he is entitled to personal redress under § 1983. The defendants are entitled to judgment as a matter of law on these issues.

Rebaldo next argues that Miller had information regarding and knew about the risks posed by Jenkins with regard to prisoner safety. He claims that Miller's failure to train and supervise Jenkins, who was already on probation for abuse of his power, and his allowing Jenkins to remain at his regular duties created a risk to the inmates and plaintiff. He asserts that it was a policy decision by Miller to allow an untrained, unsupervised guard to remain at his regular duties and he should have known that this could result in a constitutional violation.[8]

In the instant motion, the defendants argue that the § 1983 claims against Miller should be dismissed because there can be no vicarious liability under § 1983 and Rebaldo failed to identify any personal involvement on the part of Miller. The defendants assert that Rebaldo did not allege in his complaint that Miller was a direct or proximate cause of the alleged sexual assault by Jenkins, and that he should not be allowed to do so in his opposition.

---

[8]Rebaldo also argues that this establishes an intentional indifference to his rights as an "arrestee" under "the Fourth Amendment." The Court will disregard this argument since the record clearly reflects that Rebaldo was a convicted inmate at the time of the alleged incidents and the Fourth Amendment did not govern the conditions of his confinement, protected instead by the Eighth Amendment.

With regard to this claim against Miller, the defendants are correct that the uncontested facts do not demonstrate that Miller, a supervisory officer, was directly involved in the alleged abuse by Jenkins. Rebaldo does not refute this. Generally, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980). Thus, Miller can not be held liable under § 1983 on the basis that he was directly involved in Jenkins wrongdoings or those alleged against the other prison employees. Miller is entitled to summary judgment on this issue.

Furthermore, it is the general rule that a supervisory official, like Miller, can not be held liable pursuant to § 1983 under any theory of *respondent superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.,* 168 F.3d 196, 200 (5th Cir.1999); *see also Baskin v. Parker,* 602 F.2d 1205, 1210 (5th Cir.1979). Thus, Miller can not be held vicariously liable for the acts of Jenkins or any other defendant simply because they are under his supervision or employ. Miller is entitled to summary judgment on this issue.

However, it is also well-settled under § 1983 that supervisory liability may exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). An official policy is:

1.  a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] . . . or by an official to whom the [entity] ha[s] delegated policy-making authority; or

2. A persistent, widespread practice of . . . officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992). A plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

In addition, a supervising officer, like Miller, not personally involved in the acts that deprived the plaintiff of his constitutional rights also may be liable under § 1983 if: (1) the supervising officer failed to train or supervise the subordinate officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's constitutional rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991) (citations omitted). Proof of a single instance, rather than a pattern of similar violations, normally will not sustain a plaintiff's claim that a lack of training or supervision caused a violation of his constitutional rights. *Id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir.1998); *Thompkins*, 828 F.2d at 304-05). Finally, the inadequacy of the training "must be obvious and obviously likely to result in a constitutional violation ." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)). Thus, a prison official can be liable under § 1983 where a prisoner demonstrates that "'he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (quoting *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)). The deliberate indifference standard requires the inmate to establish that the prison official

actually knew of a substantial risk of serious harm and failed to act or acted with disregard to the known danger. *Farmer v. Brennan*, 511 U.S. 825, 832-34, 837 (1994).

Rebaldo has alleged in his complaint that Miller made a policy decision to allow Jenkins to continue on duty in spite of the fact that he was already on probation for abuse of his powers. The statements of fact offered by both sides, however, fail to address or clarify whether that probation or charge arose from the prior incidents of prisoner abuse alleged by Rebaldo. There lies a genuine issue of fact.

The relevance of this factual issues goes to the resolution of whether Miller acted reasonably in allowing Jenkins to continue working after having sexually abused other inmates and without adequate supervision to quell the danger to the other inmates, like Rebaldo. There is no doubt that Rebaldo alleged in his complaint that Miller's failure to train and supervise Jenkins through corrective or disciplinary action for his prior abusive acts created the opportunity for Jenkins to abuse him. In other words, Rebaldo alleges that Miller's actions and decisions amounted to an intentional indifference to a known danger.

In that regard, Rebaldo specifically alleged that he is seeking relief against "[t]he defendants Tommy Brumfield, Major Jerry Miller for failure to take actions to curb the physical abuse of other prisoners by Jenkins" and that this "violated the plaintiff's 8th Amendment rights and constituted an assault and battery under state law."[9] Rebaldo also alleged that the supervisors, including Miller, are liable to him because Jenkins was already on probation for having committed similar acts.[10]

Rebaldo, therefore, has alleged in the complaint that Miller and others failed to properly supervise Jenkins, and this failure to keep him off duty, or to allow him on duty without adequate

---

[9]Rec. Doc. No. 1, p. 30 ¶3.

[10]Rec. Doc. No. 1, p. 12 ¶5.

supervision and training, was causally connected to the opportunity for abuse. He also alleges that Miller and others knew of the prior wrongs by Jenkins, yet allowed him to go unchecked without regard for the safety of him and the other inmates.

This claim was not addressed in the motion for summary judgment. The defendants argue instead in their reply that these allegations were not in the complaint and were first argued in Rebaldo's opposition to the motion. They contend that Rebaldo attempted to amend his lawsuit through the opposition memorandum to allege that "Miller's actions were a direct or proximate cause of the alleged sexual assault."[11] The Court finds that the allegations and claims in the complaint and the above quoted language from the complaint demonstrate that Rebaldo has alleged that Miller is liable as a supervisor because he allowed Jenkins to return to duty in spite of his probationary status based on prior incidents of abuse.

The defendants' statement of uncontested facts do not address the allegations related to Miller's decision to allow Jenkins to return to duty unsupervised in spite of the probation and known prior acts. The defendants' have not offered any competent summary judgment evidence to prove that no genuine issue of fact exists on this element of Miller's potential liability as a supervising officer. The motion is not sufficiently supported in a manner to shift the burden to Rebaldo under Fed. R. Civ. P. 56. For this reason, the Court finds that the record is not sufficient to establish that Miller is entitled to judgment as a matter of law.

For summary judgment purposes, the Court finds that Rebaldo has alleged a violation of his constitutional rights and that Miller acted with intentional indifference in failing to train or supervise Jenkins by allowing Jenkins to return to duty without restriction or supervision knowing that he had a propensity to abuse inmates. Based on the current record, a question remains as to whether

---

[11]Rec. Doc. No. 75, p.3.

Miller's policy decision and/or conduct in allowing Jenkins's to remain on duty was objectively reasonable in light of clearly established law charging him with the duty to protect inmates from a known danger.

In conclusion, based on the foregoing, the Court finds that the defendants' motion should be granted in part with respect to the § 1983 claims against Miller in his individual capacity alleging that Miller improperly covered-up the investigation into Jenkins's sexual acts against other inmates, failed to take disciplinary action against Jenkins, and failed to report Jenkins's acts to the district attorney for prosecution. The motion should be denied in part with respect to Miller's § 1983 claims alleging that Miller is liable as a policy-maker or as a supervisor for failure to train or supervise Jenkins by allowing Jenkins back on duty in spite of the prior known abusive acts upon other inmates.

**C.**     **Claims Against Dr. Lo and Liz Olivera**

The defendants contend that Lo and Olivera are also entitled to qualified immunity because the plaintiff failed to raise a genuine issue of material fact regarding the conduct of the mental healthcare professionals. The defendants contend that Rebaldo's complaint about the inadequacy of the medication is merely a challenge to the treating physicians course of prescribed treatment, which is insufficient to constitute deliberate indifference to his serious medical needs. The motion does not address the state law claims against Lo or Olivera in their individual capacities.

Rebaldo opposes the motion asking the Court to deny the motion and allow time for additional discovery. He contends that the allegations in the complaint against Lo and Olivera are general and not specific. He argues that discovery would allow time to determine what Lo and Olivera did and why it was unreasonable.

A reading of the complaint reflects that Rebaldo specifically alleged that, after the incident with Jenkins, Dr. Lo failed to supply him with proper medication warranted by his symptoms, which included severe panic attacks, depression, insomnia, and nightmares. He also claims that Dr. Lo would not provide him with any therapy to cope with the trauma. He alleges Dr. Lo to have been an "uncaring and apathetic professional healthcare provider."

Rebaldo also alleged that Olivera failed to provide him with therapy and other services required by DOC policies. He claims she had an apathetic attitude towards his mental health. He further alleges that she would only talk to him in front of a correctional officer on the tier with 30 other inmates around. He further claims that she and Dr. Lo and the other social worker were deliberately indifferent to his care.

There also is no clearly establish legal requirement that Olivera meet in solitude with Rebaldo, even if he was uncomfortable in the chosen location. In fact, it is well-established that prisoners retain a very minimal expectation of privacy in their prison cells and surroundings. *See Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984).

Similarly, with regard to medical information, the federal courts have held that a prisoner only has a limited privacy right. *See Doe v. Delie*, 257 F.3d 309, 315-16 (3d Cir. 2001); *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999) (concluding that a gratuitous disclosure of an inmate's confidential medical information as humor or gossip is not reasonably related to a legitimate penological interest, and it therefore violates the inmate's constitutional right to privacy). However, there is no bright line and the issue remains undecided in other courts. *See*, *e.g.*, *Simpson v. Joseph,* No. 06-C-200, 2007 WL 433097, at *34-35 (D. Wis. Feb. 5, 2007) (noting that whether prisoners have privacy rights in their prison medical records is an open question in the Seventh Circuit); *Richey v. Ferguson*, No. 05-5162, 2007 WL 710129, at *22 (W.D. Ark. Mar. 6, 2007) (issue of an

inmate's medical privacy rights is undecided in the Eight Circuit); *Lankford v. Medrano*, 27 F.3d 477 (10th Cir. 1994) (same for 10th Circuit); *Mares v. ConAgra*, 971 F.2d 492, 496 (10th Cir. 1992) (same). Some federal courts have held that a prisoner does not have a constitutional privacy interest in medical conditions other than HIV which, even though potentially embarrassing, are not of the same excruciatingly private and "intimate nature" of HIV and transsexualism. *See, e.g.*, *Rodriguez v. Ames*, 287 F. Supp. 2d 213, 220 (W.D.N.Y. 2003) (Prisoner had no privacy interest in diagnosis of proctitis, nontoxic inflammation of the mucose tissue of the rectum, and internal hemorrhoids); *Webb v. Goldstein*, 117 F. Supp. 2d 289, 0298 (no privacy concerning treatment for various genital conditions).

Assuming, arguendo, that a privacy right existed at all, it could be impinged upon by prison officials if the official's action was "reasonably related to penological interests." *Powell,* 175 F.3d at 112; *see also Turner v. Safley,* 482 U.S. 78, 89 (1987). Moreover, "[p]risoners cannot enjoy greater privacy protection than individuals in free society, and some amount of sharing of medical information in areas where it might be overheard by other patients - e.g., in hospital emergency rooms, school infirmaries, and the waiting room of a doctor's office- is commonplace." *Franklin v. McCaughtry,* 110 F. App'x 715, 719 (7th Cir. Sept. 7, 2004) (citations omitted).

Rebaldo first alleges that Olivera spoke to him in the presence of a prison officer and within earshot of other inmates. In this case, there is no clearly defined law which would have required Olivera to talk with Rebaldo in a particular setting or in extreme privacy. The presence of the security guard demonstrates that prison security interests may have been at issue, with a civilian woman present on the tier. Nevertheless, Rebaldo suffered no harm and does not suggest that any of the medical information was ever used against him by a guard or other inmate. As a result, Olivera is entitled to qualified immunity for having spoken with Rebaldo in the presence of others.

Rebaldo's remaining claim against Olivera and Dr. William Lo arises from his allegation that neither the doctor nor the social worker provided him with psychiatric care and treatment for his symptoms caused by the incidents with Jenkins. The standard of conduct imposed on defendants with respect to medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id.* at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials and healthcare providers in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983." (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In the context of deliberate indifference to his psychiatric illness, the general rule would require Rebaldo to allege "enough facts of prior psychiatric illness or treatment, of expert medical opinion, or of behavior clearly evincing some psychiatric ill to create a reasonable ground to believe that psychiatric treatment is necessary for his continued health and well-being." *See Woodall v. Foti*, 648 F.2d 268, 273 (5th Cir. 1981). In this case, however, Rebaldo is not claiming that he entered the prison with a pre-existing psychiatric condition. Instead, he alleges that the incidents in prison with Jenkins created a need for psychiatric care, which he was denied. Thus, Rebaldo must establish that, after enduring the incidents with Jenkins, "the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *accord*, *Partridge v. Two Unknown Police Officers of Houston*, 791 F.2d 1182, 1187 (5th Cir. 1986) (the failure to treat a serious psychological or psychiatric condition could result in a viable § 1983 claim).

The defendants have submitted a statement of uncontested facts in which it is alleged that Dr. Lo prescribed antidepressant medication to Rebaldo but that Rebaldo did not agree with the choice of medication. They also contend that Rebaldo met with Olivera for counseling, but that he did not care for her apathetic attitude. None of these resolutions are supported by anything in the record, much less by competent summary judgment evidence.

The movants did not submit sworn affidavits or even certified medical records to establish these "uncontested facts." While Fed. R. Civ. P. 56 does not require supporting affidavits to be filed, the record must be sufficient for the court to resolve which facts are not genuinely at issue. The record before the Court is not sufficient to find that the treatment given to Rebaldo is as stated in the counsel's statement of uncontested facts. In spite of this, defendants suggest that it is Rebaldo

who has not properly opposed their motion to demonstrate genuine issue of fact.  However, under

Fed. R. Civ. P. 56, only when a motion "is properly made <u>and supported</u>" is the opposing party

required to go beyond the pleadings and to show by affidavit or other competent evidence which

facts are genuine issues left for trial.  The Court does not find that the defendants' motion is

adequately supported on the issue of the adequacy of the medical care, or their entitlement to

qualified immunity on that issue.

For this reason, the Court finds that the record is not sufficient to establish that Rebaldo

received psychiatric treatment, or that his psychiatric treatment or counseling was constitutionally

adequate, or that his claim is merely one of discontent or disagreement with the care and treatment

offered.  The Court finds that, at this time, these are genuine issues of fact to be determined at trial,

and defendants have not established they are entitled to qualified immunity on this issue.

For the foregoing reasons, the defendants' motion should be granted in part with regard to

Rebaldo's claims against Olivera for consulting with Rebaldo in the presence of others, and denied

with respect to the claims against Lo and Olivera for denial of adequate psychiatric care and

treatment.

## IV.    <u>Recommendation</u>

It is therefore **RECOMMENDED** that the **Motion for Summary Judgment (Rec. Doc. No. 71)** filed by the defendants Lo, Olivera, and Miller be **GRANTED in part** and that the following be ordered:

(1)    Rebaldo's § 1983 and state law claims against Miller, Lo, and Olivera in their official capacities be **DISMISSED WITHOUT PREJUDICE** because the Court lacks jurisdiction under the Eleventh Amendment.

(2)    Rebaldo's § 1983 claims against Miller in his individual capacity alleging that Miller improperly covered-up the investigation into Jenkins sexual acts against other inmates, failed to take disciplinary action against Jenkins, and failed to report Jenkins's acts to the district attorney for prosecution be **DISMISSED WITH PREJUDICE**.

(3)     Rebaldo's § 1983 claims against Olivera, in her individual capacity, for consulting with him in the presence of others be **DISMISSED WITH PREJUDICE**.

It is therefore **RECOMMENDED** that the **Motion for Summary Judgment (Rec. Doc. No. 71)** filed by the defendants Lo, Olivera, and Miller be **DENIED in part** with regard to Rebaldo's § 1983 claims against Miller, in his individual capacity, as a policy-maker and as a supervisor for failure to train and supervise by allowing Jenkins back on duty in spite of the prior abusive acts upon other inmates; and with regard to Rebaldo's § 1983 claims against Lo and Olivera, each in their individual capacities, for denial of adequate psychiatric care and treatment.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[12]

New Orleans, Louisiana, this 28th day of July, 2010.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[12]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.