```
                       UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF LOUISIANA
```

RICHARDI J. REBALDO                              CIVIL ACTION

VERSUS                                           NO: 08-4062

ALBERT JENKINS, ET AL.                           SECTION: "A" (4)


## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 91)** filed by defendants Dr. William Lo, Elizabeth Olivera, and Jerry Miller.[1]  Plaintiff Richardi Rebaldo opposes the motion.  The motion, set for hearing on May 25, 2011, is before the Court on the briefs without oral argument.  For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

Plaintiff Richardi Rebaldo is an inmate sentenced to the custody of the Louisiana Department of Public Safety and Corrections in Angie, Louisiana.  Rebaldo filed this suit pro se and in forma pauperis against defendants Dr. William Lo, Elizabeth Olivera, Gary King, and Jerry Miller, individually and in their official capacities, under 42 U.S.C. § 1983 and state law.[2]  Rebaldo's claims arise out of an incident that occurred on

---

[1] Defendant Gary King is not joining in the motion.

[2] Rebaldo named other defendants too but many have been dismissed via significant motion practice before Magistrate Judge

August 7, 2007--he claims that prison guard Albert Jenkins trapped him in a closet and sodomized him with a broom stick. The Court appointed counsel to represent Rebaldo. Rebaldo seeks monetary relief.

Defendants Lo (doctor), Elizabeth Olivera (social worker), and Jerry Miller (prison supervisory official) move for summary judgment as to all claims asserted against them. Movers argue that Rebaldo has failed to exhaust his administrative remedies as to the claims asserted against them.

## II. **DISCUSSION**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. (citing Anderson, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. Id. (citing Anderson, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support

---

Roby. The consent referral has since been revoked.

the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. Id. (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

Under the Prison Litigation Reform Act ("PLRA"), prisoners are required to exhaust administrative remedies before filing suit. Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004). Specifically, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. (quoting 42 U.S.C. § 1997e(a) (2000)). The exhaustion requirement is not jurisdictional, Johnson, 385 F.3d at 522 n.149 (citing Underwood v. Wilson, 151 F.3d 292, 294- 95 (5th Cir. 1998)), but there is no question that the PLRA mandates exhaustion such that unexhausted claims cannot be brought in court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)).

Section 1997e(a) does not say how specific a prisoner's

3

administrative grievance must be. The level of detail necessary to comply with the grievance procedure will vary from system to system and claim to claim but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. Jones, 549 U.S. at 218.

Louisiana's prisoner grievance system is described in the state's Administrative Code. The Administrative Remedy Procedure or ARP process is initiated by the inmate writing a letter to the warden, in which he briefly sets out the basis for his claim and the relief sought. La. Admin. Code tit. 22, Pt. I, § 325(G)(1)(a). This is the First Step in the ARP process. An inmate who is dissatisfied with the First Step response may appeal to the secretary of the Department of Public Safety and Corrections. Id. § 325(G)(2)(a). This is the Second Step in the ARP process. If an inmate is not satisfied with the Second Step response, he may file suit in district court. Id. § 325(G)(2)(b).

As seen above, Louisiana's ARP procedure does not require a specific level of detail in the inmate's letter. As a general matter courts typically use a standard according to which a grievance should give prison officials "fair notice" of the problem that will form the basis of the prisoner's suit. Id. (quoting Burton v. Jones, 321 F.3d 569, 575 (6th Cir. 2003)). Courts are to interpret the exhaustion requirement in light of

4

its purposes, which include the goal of giving officials "time and opportunity to address complaints internally." Johnson, 385 F.3d at 516 (quoting Porter, 534 U.S. at 525). The amount of information necessary will depend to some degree on the type of problem about which the inmate is complaining. Id. A grievance is not per se insufficient merely because it fails to name an individual later sued, Jones, 549 U.S. at 219, because the PLRA is not designed to give personal notice to a particular official that might later be sued, Johnson, 385 G.3d at 522. And the uncounselled prisoner is usually not in the best position to delineate the specific legal theories upon which liability might lie. Johnson, 385 F.3d at 517.

Turning now to Rebaldo's case, he filed 22 ARPs between January 1, 2007, and August 26, 2009. (Morgan affid. ¶ 10; Rec. Doc. 91-3). All of the ARPs that Rebaldo submitted before August 7, 2007 (the date of the incident), are irrelevant. Of the ARPs filed on or after August 7, 2007, only one has obvious and undisputed relevance to this case, ARP 07-379 c/w 07-390.[3]

---

[3] ARP 08-40 (filed 2-7-08) also pertains to this incident but it was rejected by the prison staff as being duplicative of ARP 07-379. The Court has reviewed the ARP 08-40 and while it relates to the incident with Albert Jenkins it differs from ARP 07-379 in that Rebaldo seems to be complaining about the warden's refusal to pursue criminal charges against Jenkins and about retaliatory behavior by other guards since filing the 07-379 ARP, none of which formed a part of that ARP. Because the substance of ARP 08-40 does not help Rebaldo avoid summary judgment as to the claims before the Court today, the Court will not consider it further.

Defendants do not dispute that this ARP was exhausted through both steps of the process.

The only other ARP that Rebaldo has ever suggested is pertinent to this case is ARP 07-474 (filed on October 12, 2007), which Rebaldo included with his complaint. Defendants take the position that this ARP did not proceed through both steps of the ARP process because Rebaldo withdrew it. (Morgan affid. ¶ 24). The record does contain a hand-written note from Rebaldo dated October 16, 2007, asking to drop the ARP. Nonetheless, on October 26, 2007, a First Step response was issued denying the ARP, and on that form Rebaldo specifically checked off that he wanted to proceed to Step Two of the process, and he included a narrative of his reasons for doing so. For purposes of the instant motion, the Court will consider this ARP to have been exhausted.

That said, neither the 07-379 ARP (c/w 07-390) nor the 07-474 ARP can be construed as exhausting the claims as to defendants Lo and Olivera. The remaining claims against Dr. Lo and Olivera arise from the allegation that neither the doctor nor the social worker provided Reabaldo with psychiatric care and treatment for his mental distress following the incident(s) with Jenkins, (Roby R&R at 23; Rec. Doc. 78), characterized by Plaintiff as deliberate indifference to serious medical needs, (Pla. oppo. at 1; Rec. Doc. 92). ARP 07-379 pertains solely to

the sexual assault incident. ARP 07-474 pertains solely to a complaint regarding EMT Bruce Stewart and his treatment of Plaintiff for complaints of rectal bleeding. Neither ARP even remotely suggests a problem with the rendition of mental health treatment. The ARPs did not give prison officials notice that Rebaldo was having a problem obtaining mental health care, and an appropriate ARP might very well have resolved such an issue without the need for subsequent litigation.

Plaintiff's contention in opposition is not that the ARPs alluded to a problem with Lo and Olivera but that the claims against them stem from the same incident with Jenkins described in ARP 07-379. Plaintiff contends that it was the prison's own failure to properly investigate Rebaldo's complaints that deprived the prison of notice as to all of the claims in this case.

The Court does not agree as far as Lo and Olivera are concerned. The claims against Lo and Olivera, namely, deliberate indifference to serious medical needs, constitute a separate and distinct constitutional violation from the sexual assault claim, with attendant injuries beyond those sustained by the Jenkins-based constitutional violation. The most thorough of investigations into the Jenkins incident would not likely have revealed the alleged problems with Lo and Olivera. The primary purpose of exhaustion is to give prison officials notice of the

problem so that remedial measures can be taken. The alleged problems with Lo and Olivera, which suggest more of an ongoing issue rather than a one-time incident, would have been especially well-suited to resolution via the ARP process. Plaintiff did not exhaust the claims against these two defendants so their motion for summary judgment is GRANTED.

The Court is not persuaded, however, that the same reasoning applies to the claims against Major Jerry Miller. The claim against Major Miller is one for failing to properly train and supervise Jenkins but this conduct, if true, does not constitute a separate violation of Rebaldo's rights with attendant separate injuries. The constitutional violation at issue here was committed at the hands of Jenkins (and perhaps others) who were directly and personally involved in the sexual assault upon Rebaldo. The legal theory espoused against Miller simply makes him potentially liable for a constitutional injury meted out by one of his inferior officers. But even if Miller's failure to train/supervise led to the assault by Jenkins, Plaintiff suffered no additional constitutional injury and no additional damages. As to the claims against Miller, the Court finds merit in the arguments <u>supra</u> that Plaintiff has offered in opposition.

Further, the purposes of exhaustion were not compromised by Rebaldo's failure to include a supervisory § 1983 claim against Miller in his ARP. Rebaldo's ARP 07-379 recounted the Jenkins

incident in graphic detail, and prison officials were clearly armed with sufficient facts to thoroughly investigate the incident. The basis for imposing supervisory liability as to Miller is conduct that pre-dated the Jenkins incident so an ARP would not have been especially helpful in resolving the issue. The law is clear that the ARP is not deficient as to Miller simply because Rebaldo did not mention him specifically or that he failed to recite every legal theory upon which he might rely in a subsequent lawsuit. The motion is DENIED as to defendant Jerry Miller.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 91)** filed by defendants Dr. William Lo, Elizabeth Olivera, and Jerry Miller is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** as to the claims against defendants William Lo and Elizabeth Olivera and the complaint is **DISMISSED** as to these defendants without prejudice. The motion is **DENIED** as to the claims against Jerry Miller.

June 8, 2011

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE